UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SUZANNE M. HAMMER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:19-CV-143-HBG ) |
| ANDREW M. SAUL,[1] Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

### MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 13].

Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 14 & 15] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19]. Suzanne M. Hammer ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

### I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for disability benefits pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.* on August 16, 2013. [Tr. 104–05, 323–29]. These applications were denied initially [Tr. 170–74] and on reconsideration

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

[Tr. 175–78]. A hearing before an ALJ was held on October 16, 2015 [Tr. 54–72], and on November 3, 2015, ALJ Sherman Schwartzberg found that Plaintiff was not disabled [Tr. 146–58]. The Appeals Council subsequently granted Plaintiff's request for review, and on October 31, 2016, remanded the case for ALJ Schwartzberg to resolve inconsistencies between Plaintiff's RFC and the occupations identified by the vocational expert. [Tr. 164–66].

The ALJ obtained additional testimony from Plaintiff on February 3, 2017 [Tr. 45–53], ordered a physical consultative examination, and held a third hearing on September 20, 2017, in which the ALJ also heard testimony from a vocational expert [Tr. 36–53]. However, on October 10, 2017, ALJ Schwartzberg again found that Plaintiff was not disabled. [Tr. 15–28]. The Appeals Council denied Plaintiff's request for review on June 17, 2019 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on August 8, 2019, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since March 27, 2015, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; psoriatic arthropathy; depression; and anxiety (20 CFR 404.1520(c) and 416.920(c)).

2

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can handle and finger frequently with the bilateral upper extremities; she should avoid concentrated exposure to hazards and vibration; and she is limited to simple, routine, repetitive tasks with occasional public contact.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 27, 1960 and was 54 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not at issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 27, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 17–28].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

3

Case 2:19-cv-00143-HBG   Document 20   Filed 09/18/20   Page 3 of 20   PageID #: 1159

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

4

than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

5

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence, claiming that the ALJ failed to afford proper weight to the medical opinions of record. Plaintiff alleges that the ALJ failed to properly consider and evaluate the opinion evidence, as the ALJ's RFC determination is "less physically restrictive than any medical source opinion contained in the record." [Doc. 15 at 11]. Therefore, Plaintiff challenges the weight afforded by the ALJ to the opinions of her treating provider, Thomas Beckner, III, M.D., consultative physical examiner, Marianne Filka, M.D., and nonexamining state agency consultants, Saul Juliao, M.D. and Karla Montague-Brown, M.D.

### A. Dr. Beckner's Opinion

Plaintiff challenges the ALJ's assignment of little weight to the medical source statement of her treating physician, Dr. Beckner. Plaintiff asserts that the ALJ's finding that Dr. Beckner's opinion was not supported by his examination findings "is inconsistent with the ALJ's own citation to the record," as well as that the "ALJ's description of Plaintiff's daily activities [when reviewing Dr. Beckner's opinion] fails to accurately reflect the complete context [of these activities]." [*Id.* at 12–13]. The Commissioner responds that the ALJ properly evaluated Dr. Beckner's opinion, as it was delivered several months before the alleged onset date and that the ALJ "discussed the specific inconsistencies that undermined the opinion." [Doc. 19 at 20].

6

Plaintiff established treatment with Dr. Beckner as her primary care physician on October 19, 2011, and he subsequently diagnosed psoriatic arthritis and low back pain. [Tr. 704–06]. Plaintiff continued treatment with Dr. Beckner on a regular basis from November 2011 to November 2013, with routine follow-up appointments for her psoriatic arthritis. [Tr. 553–78, 670–72, 699–700, 703–04]. Plaintiff was also seen by Dr. Beckner after reporting back pain and stiffness, as well as decreased range of motion in her spine, on September 18, 2014 and October 17, 2014. [Tr. 770, 766–68].

Dr. Beckner then completed a Medical Assessment of Ability to Do Work-Related Activities (Physical) on December 18, 2014. [Tr. 742–43]. First, Dr. Beckner opined that due to Plaintiff's back and knee pain, psoriatic arthritis, and Simmonds disease, she could only lift and carry five pounds occasionally and up to ten pounds frequently. [Tr. 742].[2] Additionally, Dr. Beckner found that Plaintiff could only stand and/or walk for two to three hours in an eight-hour day, with only one hour being without interruption, as well as that she could only sit for one hour at a time and two hours total due to her chronic low back pain. [*Id.*]. Moreover, Dr. Beckner opined that Plaintiff could never climb, stoop, kneel, balance, crouch, or crawl, as well as that she had additional limitations in her ability to reach, handle, feel, and push/pull. [Tr. 743].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other

---

[2] The Court notes the disparity in Dr. Beckner's opinion that Plaintiff was able to carry a higher amount of weight, ten pounds, frequently as opposed to only occasionally. [Tr. 742]. Plaintiff and the Commissioner both appear to state that Dr. Beckner intended to opine that Plaintiff could only frequently lift/carry five pounds and occasionally lift/carry ten pounds. *See* [Doc. 15 at 5]; [Doc. 19 at 9].

7

substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).[3] When an opinion does not garner controlling weight, the appropriate weight to be given to the opinion will be determined based upon the length of treatment, frequency of examinations, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *Id.*

The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight") (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).

In the disability decision, the ALJ reviewed Dr. Beckner's opinion, and stated the following concerns:

> The undersigned has considered the opinion of Dr. Beckner in Exhibit B13F, but gives his opinion little weight as his opinion is too restrictive and not supported by his own medical records or findings, or with the other evidence of record. Furthermore, his opinion is not supported by Dr. Filka's findings on examination or with the claimant's reported activities of daily living, as described above.

---

[3] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

8

[Tr. 26]. Here, contrary to Plaintiff's arguments, the Court finds that the ALJ's treatment of Dr. Beckner's opinion is supported by substantial evidence, as the ALJ stated that Dr. Beckner's opinion was not supported by his own examination findings, the medical record as a whole, the findings of consultative examiner, Dr. Filka, or Plaintiff's reported activities of daily living.

The Sixth Circuit has directed that "it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010). The ALJ met that standard here by previously providing examples as to how Dr. Beckner's records support and contradict other evidence. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 285-86 (6th Cir. 2009); *see also Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion."); *Simmons v. Berryhill*, No. 4:17-CV-15-TWP-CHS, 2018 WL 1413179, at *5 (E.D. Tenn. Mar. 21, 2018) ("The ALJ's analysis of a treating physician's opinion may cite inconsistencies in the evidence, but the ALJ need not refer again to specific inconsistencies again when those were listed earlier in the decision."). While reviewing the medical record, the ALJ noted that although Dr. Beckner's examination findings "showed occasional tenderness in the right knee . . . and mild tenderness in the left hip . . . they showed that [Plaintiff] had good range of motion and strength," as well as that Dr. Beckner's "records show that the claimant's symptoms were generally stable and controlled with medications throughout the period at issue." [Tr. 21]. *See Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1001 (6th Cir. 2011) (noting the ALJ found the treating physician's "modest treatment regimen for [the

9

claimant]—consisting solely of pain medication—was inconsistent with a finding of total disability"). With respect to Dr. Filka's opinion, which the Court will subsequently address in greater detail, the ALJ reviewed the examination findings and afforded the opinion some weight but noted that it was inconsistent with Dr. Beckner's opinion. [Tr. 26].

Additionally, although Plaintiff points to subjective and objective findings from her examination records with Dr. Beckner, the ALJ largely cited to these records and detailed how they accounted for certain limitations. [Tr. 21, 23]. However, the ALJ also found that the RFC determination was "supported by treatment records, which indicate that [Plaintiff] has been maintained on medications throughout the period at issue, and her reported activities of daily living." [Tr. 23]. The Court finds that the ALJ did not mischaracterize Plaintiff's treatment records; rather, he resolved inconsistent evidence in the medical record and properly detailed portions of the medical record that were inconsistent with Dr. Beckner's opinion.

Lastly, the ALJ noted that Dr. Beckner's opinion was inconsistent with Plaintiff's reported activities of daily living. Previously, the ALJ reviewed that Plaintiff reported being able to prepare simple foods, walk her dog, do laundry, feed her cats and clean the litter box, manage her finances, and spend time with family and friends, among other reported daily activities. [Tr. 24]. However, Plaintiff claims that the exhibits cited by the ALJ are dated prior to the amended onset date, and more importantly, that "many of the activities referenced are significantly more restricted than noted by the ALJ." [Doc. 15 at 13]. For example, Plaintiff asserts that she noted the need to take breaks, with the assistance of her son, for many of the reported activities, as well as that she "reported that she does not cook anymore, her son does the grocery shopping, and [she] talks with her parents and sister on the phone about once a month." [*Id.* at 14].

Where the evidence regarding a claimant's activities of daily living is

10

"plausibly contradictory," an ALJ's adverse inference is justified. *Amir v. Commissioner*, 705 F. App'x 443, 441 (6th Cir. 2017) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.")). Here, the Court finds that the ALJ identified plausibly contradictory reported activities of daily living which were inconsistent with Dr. Beckner's opinion. *See Hummel v. Comm'r of Soc. Sec.*, No. 2:16-cv-937, 2018 WL 1373869, at *3 (S.D. Ohio Mar. 19, 2018) (finding inconsistency with record evidence, including activities of daily living constitutes good reason to discredit treating physician's opinion). Moreover, the ALJ did not base his treatment of Dr. Beckner's opinion solely on Plaintiff's reported activities of daily living

Although Plaintiff would interpret the medical evidence differently, the Court finds that the ALJ's determination was within his "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted); *see also Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings."). Accordingly, the ALJ adequately provided good reasons to afford little weight to Dr. Beckner's opinion, and substantial evidence supports that finding. *Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013) (affirming the ALJ's assignment of less than controlling weight to a treating physician's opinion because the

11

opinion "was contradicted by other evidence in the record demonstrating that Keeler was able to engage in significant physical activities . . . .").

**B.     Dr. Filka's Opinion**

Plaintiff claims that the ALJ improperly afforded some weight to the opinion of consultative examiner, Dr. Filka.  Plaintiff asserts that the ALJ improperly found that Dr. Filka's opinion was not supported by her own examination findings or the medical record, and improperly analyzed Plaintiff's maintained treatment on pain medication.  The Commissioner responds that the ALJ properly evaluated Dr. Filka's opinion and detailed how her findings were inconsistent with the medical record.  Additionally, the Commissioner notes that the "jobs identified by the vocational expert could all be performed with Dr. Filka's opined restrictions, as they all required exerting 20 to 50 pounds of force occasionally and/or 10 to 25 pounds of force frequently."  [Doc. 19 at 17].

Dr. Filka examined Plaintiff on March 13, 2017, after the Appeals Council originally remanded Plaintiff's case.  [Tr. 1000–13].  First, Dr. Filka noted that Plaintiff reported joint pain to her hands, both knees, and both hips.  [Tr. 1000].  Past medical illnesses noted included Sheehan's syndrome, GERD, and generalized anxiety disorder and depression.  [*Id.*].  On examination, Plaintiff's skin was marked as notable for psoriatic plaques in both elbows and some small guttate plaques in the buttocks.  [Tr. 1003].  Additionally, Dr. Filka noted that that Plaintiff's respiratory and cardiovascular examinations were normal; her joint appearance showed enlarged MCPs most prominent in the second and third MCPs; that the ankle joints were enlarged medically with a slight valgus deformity bilaterally; and that Plaintiff had bilateral moderate pes planus.  [*Id.*].  However, Dr. Filka indicated that Plaintiff's range of motion was full throughout, with her

12

strength at 5/5 and symmetric distally and proximally in both upper and lower extremities, as well as that Plaintiff's fine and gross manipulative skills appeared to be normal. [*Id.*].

Moreover, Dr. Filka noted that Plaintiff's muscle mass appeared normal throughout with no atrophy or hypertrophy, with Plaintiff's sensation normal to light tough throughout; and that there was tenderness into the MTPs to compression and minor soft tissue tenderness in both calves and both thighs. [Tr. 1004]. Additionally, Dr. Filka indicated that she did not detect any red, hot, swelled joints or joint effusions; that Plaintiff's gait was normal and performed without an assistive device, with Plaintiff being able to easily toe stand, squat, and do a one-leg stand right and left; as well as that postural changes were done with no particular evidence of difficulty. [*Id.*]. Dr. Filka also found no deformity in Plaintiff's spine or tenderness in the cervical or thoracic areas; that Plaintiff had tenderness over the SI joints in the low back; positive bilateral sacral notch tenderness and negative bilateral straight leg raising; but that Plaintiff's range of motion of the cervical and lumbar spine was normal. [*Id.*].

Therefore, Dr. Filka diagnosed psoriatic arthritis with chronic constant polyarthralgias, joint enlargement, and history of psoriasis; psoriasis; Sheehan's syndrome (also known as Simmond's syndrome); gastroesophageal reflux disease; generalized anxiety disorder and depression; status post C-section and hysterectomy; tobaccoism; polysubstance abuse in the past; chronic intermittent lumbar pain with bilateral lower extremity radiating pain to toes, likely psoriatic arthritis related; dental caries; and a small umbilical hernia. [*Id.*]. Accordingly, Dr. Filka opined that because of her chronic polyarthralgias and lumbar pain and radiating pain, Plaintiff could lift, push, pull, or carry occasionally up to thirty pounds and more frequently up to twenty pounds. [Tr. 1005]. Dr. Filka opined that Plaintiff should avoid operating heavy vibrating equipment, as it may worsen her pain, but that she would not place Plaintiff at other restrictions at

13

the present time due to the provided patient history, reviewed medical records, and physical examination findings. [*Id.*].

In the disability determination, after reviewing Dr. Filka's opinion in great detail, the ALJ stated that:

> The undersigned has also considered the opinion of Dr. Marianne Filka in Exhibit B26F and gives her opinion some weight as her opinion is partially consistent with the opinion of the undersigned. Although she indicated that the claimant could push, pull, lift, and carry only 30 pounds occasionally and 20 pounds more frequently, the undersigned finds that this is too restrictive and is not supported by her own findings on examination or with the other evidence of record. Furthermore, the undersigned notes that treatment records reflect that the claimant's symptoms have been maintained on medications throughout the period at issue.

[Tr. 26].

Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). Ultimately, there is no rule that requires an articulation of each of these factors. *Albaugh v. Comm'r of Soc. Sec.*, No. 14-CV-10963, 2015 WL 1120316, at *6 (E.D. Mich. Mar. 11, 2015).

The ALJ is not required to give "good reasons" for the weight assigned to the opinions of non-treating and examining consultants, as "this requirement only applies to treating sources." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). However, "[u]nless a treating source's

14

opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ." 20 C.F.R. § 416.927(e)(2)(ii). Social Security Ruling (SSR) 96–6P provides that, although "[a]dministrative law judges . . . are not bound by findings made by State agency . . . physicians and psychologists . . . they may not ignore these opinions and must explain the weight given to the opinions in their decisions." 1996 WL 374180, at *3 (July 2, 1996).

Here, the Court finds that the ALJ properly reviewed Dr. Filka's opinion, and as the opinion of an examining consultant, was not required to provide good reasons for not affording it controlling weight. Moreover, the ALJ appropriately detailed that the opinion was only afforded some weight, because the opined restrictions on Plaintiff's abilities to push, pull, lift, and carry were too restrictive and not supported by the medical record or Dr. Filka's examination findings. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012) (holding a consultative examiner's opinion "may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record"); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (explaining that opinions from one-time consultative examiners are not due any special degree of deference); *Hinkle v. Berryhill*, No. 2:17-CV-54, 2018 WL 2437238, at *5 (E.D. Tenn. May 30, 2018) (holding the ALJ properly assigned little weight to a consultative examiner's opinion, as the ALJ detailed how the opinion was not consistent with the examination or medical record, as well as reviewed Plaintiff's subjective allegations).

Plaintiff largely challenges the ALJ's treatment of Dr. Filka's opinion with respect to his finding that "treatment records reflect that the claimant's symptoms have been maintained on medications throughout the period at issue." [Tr. 26]. Plaintiff asserts that "[c]ontrary to the ALJ's reasoning, the need to be maintained on pain medication, in this case Morphine Sulfate and

15

Oxycodone-Acetaminophen, does not support rejecting the more restrictive limitations given by this reviewing source." [Doc. 15 at 16].

"A treatment regimen consisting mostly of pain medication is inconsistent with a finding of total disability." *Harris v. Comm'r of Soc. Sec.*, No. 1:17CV1854, 2018 WL 4510111, at *7 (N.D. Ohio Sept. 20, 2018) (citing *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1001–02 (6th Cir. 2011)). Here, the ALJ did not discredit Dr. Filka's opinion solely because of Plaintiff's use of pain medication; rather, he appropriately considered Plaintiff's course of treatment in reviewing Dr. Filka's opinion. Previously, the ALJ cited to examples in the medical record wherein Plaintiff's treatment was effective in treating her pain and found that her low back pain has been "maintained on medications throughout the period at issue." [Tr. 20–21].

Accordingly, for the reasons set forth above, the Court finds that the ALJ's treatment of Dr. Filka's opinion is supported by substantial evidence, and Plaintiff's assignments of error do not constitute a basis for remand.

### C. Opinions of the Nonexamining State Agency Consultants

Lastly, Plaintiff challenges the ALJ's assignment of little weight to the opinions of the nonexamining state agency physicians—Dr. Montague-Brown and Dr. Juliao. Plaintiff asserts that the ALJ failed "to properly consider these reviewing source opinions." [Doc. 15 at 17]. The Commissioner again notes that none of the "representative jobs identified by the vocational expert would not be precluded by the doctors' opined restrictions, as none require more than frequent postural activities." [Doc. 19 at 16]. Moreover, the Commissioner claims that the ALJ appropriately considered the opinions of the nonexamining state agency physicians and explained why portions of their opinions were not adopted.

Dr. Montague-Brown reviewed the evidence of record at the initial level of the agency's

16

review on March 18, 2014, and opined that Plaintiff could occasionally lift and/or carry up to fifty pounds and frequently lift and/or carry up to twenty-five pounds; as well as that she could sit or stand and/or walk for about six hours in an eight-hour workday. [Tr. 84]. Additionally, Dr. Montague-Brown found that Plaintiff could frequently push/pull with the bilateral upper extremities; frequently engage in all postural activities; and could handle and finger frequently with the bilateral upper extremities. [Tr. 84–85].

Dr. Juliao reviewed the evidence of record at the reconsideration level of the agency's review on August 13, 2014, and also opined that Plaintiff could occasionally lift and/or carry fifty pounds and frequently lift and/or carry twenty-five pounds, stand and/or walk for sit for about six hours in an eight-hour work day, as well as that she could only frequently push/pull with her bilateral upper extremities due to her shoulder pain. [Tr. 116]. With respect to Plaintiff's postural limitations, however, Dr. Juliao indicated that while Plaintiff could frequently climb ramps/stairs, balance, stoop, kneel, or crouch, she could only occasionally climb ladder/ropes/or scaffolds. [*Id.*]. Additionally, Dr. Juliao similarly found that Plaintiff could handle and finger frequently with the bilateral upper extremities. [Tr. 117].

In this disability determination, the ALJ reviewed the opinions of the nonexamining state agency physicians, and first found that:

> While [Dr. Montague-Brown] indicated that the claimant would be limited to frequent pushing/pulling with the bilateral upper extremities and frequent postural activities, the undersigned finds that this is too restrictive and is not supported by medically acceptable clinical findings and other diagnostic techniques and is not consistent with the other evidence of record. The undersigned notes that Dr. Filka noted that the claimant had full range of motion, normal strength, intact sensation, normal reflex, and normal gait. She stated that fine and gross manipulative skills appeared to be normal. She noted that hand grip strength and thumb index pinch she would rate 5/5 and symmetric. However, after a careful review of the documentary evidence and considering the claimant's subjective complaints, the undersigned finds that the claimant is further limited and should avoid concentrated

17

> exposure to hazards and vibration. The undersigned notes that this conclusion is supported by the evidence of record and the claimant's reported activities of daily living, as described above.

[Tr. 24]. The ALJ underwent a similar analysis of Dr. Juliao's opinion, although he noted that Dr. Juliao found "that the claimant would be limited to frequent pushing/pulling with the bilateral upper extremities and to frequent postural activities except no more than occasional climbing ladders, ropes, or scaffolds." [Tr. 25].

As the Court previously detailed, opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Here, the Court finds that the ALJ appropriately detailed the weight afforded to the opinions of the nonexamining medical consultants, explained why they were not consistent with the medical record, and detailed objective medical evidence which supported his findings. Although Plaintiff claims that the ALJ "fail[ed] to reference what 'medically acceptable clinical findings', 'other diagnostic techniques and the 'other evidence of record' fails to support these opinions," the ALJ reviewed the medical record in great detail and specifically cited to Dr. Filka's examination findings that he found were inconsistent with these opinions. *See* [Doc. 15 at 17].

Further, the ALJ was not required to prove "good reasons" for rejecting the opinions of non-treating medical sources. *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (noting "a claimant is entitled under the SSA only to reasons explaining the weight assigned to his treating sources"); *see Gayheart*, 710 F.3d at 376 (holding that "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight'"). Therefore, the Court finds that the ALJ appropriately reviewed the opinions of the nonexamining state agency physicians.

18

### D. ALJ's RFC Determination

Lastly, to address the crux of Plaintiff's argument, the Court notes that although an ALJ is required to consider every medical opinion in the record, 20 C.F.R. § 404.1527(c), he is not bound to adopt any particular opinion when formulating a claimant's RFC. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'") (quoting SSR 96-5p, 1996 WL 374183 (July 2, 1996)). The ALJ is responsible for weighing medical opinions, as well as resolving conflicts in the medical evidence of record. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ). Additionally, the ALJ is only required to include limitations that he finds credible in the RFC determination. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155–56 (6th Cir. 2009).

"Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Accordingly, the "ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Id.* While the ALJ retains a "zone of choice," he must explain why he did not include limitations assessed in contradicting medical opinions. *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x. 637, 649 (6th Cir. 2013). Ultimately, the Court finds that the ALJ has appropriately considered the medical opinions of record and that the ALJ's RFC determination is supported by substantial evidence. Accordingly,

19

Plaintiff's assignments of error do not constitute a basis for remand.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 14**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

*Bruce Guyton*
United States Magistrate Judge

20